THE STATE OF CONNECTICUT *against* JOSEPH E.
HUNGERFORD.

WRIT of error.

This was an information by a grand juror against *Hungerford*, on the statute tit. 112. c. 6. s. 1. for discharging a musket, on a day of company exercise and review, without the order of a commissioned officer.

The information alleged that *Hungerford* was a soldier in the 6th company of the 35th regiment of *Connecticut* militia; that on the 5th day of *September*, 1808, which was a day of military exercise for said company, he appeared, by order of the captain, at the usual place of parade, and performed the exercises of the day, agreeably to the orders of the captain; and that after he had served in said company as aforesaid, and after he was duly dismissed, by the commanding officer of said company, from any further military services on said day, and before the going down of the sun, on or near the parade of said company, without any orders, or being commanded by any commissioned officer of said company, he discharged his musket, which was loaded with powder.

The section of the act on which the information was founded is as follows: " That if any person or persons, belonging to either of the militia companies in this state,

*June, 1810.*

STATE
v.
HUNGER-
FORD.

It is not an offence within the stat. tit. 112. c. 6. s. 1. for a soldier to discharge a musket on a day of company exercise and review, by order of a commissioned officer, after the company are dismissed for the day.

shall fire any field-piece, or discharge his musket or pistol, or suffer the same to be done by others, on any regimental, battalion, or company days of exercise, or review, excepting by order of a commissioned officer, he shall, for each offence, forfeit and pay a fine of four dollars, to be recovered by bill, plaint or information thereof made, and conviction had, before any proper court to try the same, for the use and benefit of him who shall prosecute the same to effect."

On the trial before the county court, the witnesses in behalf of the state testified, that *Hungerford* discharged his musket on the day mentioned in the information, after the company was dismissed for the day; and this was the only firing proved. The defendant then offered witnesses to prove, that after the company was dismissed, the captain ordered him to discharge his musket; to which the attorney for the state objected. The court decided that the defendant could not by law introduce that testimony, or any other, to prove any order, direction or permission of the captain, after the company was dismissed for the day.

The defendant was found guilty. He then filed his bill of exceptions to the decision of the court above stated, and brought a writ of error. The superior court reversed the judgment of the county court. The attorney for the state then brought the present writ of error, assigning the general errors.

*Hosmer*, for the plaintiff in error. The general question arising on this record is, whether the order stated in the bill of exceptions, given after the company was dismissed for the day, was an order within the exception of the statute ?

1. An order is an authoritative mandate, making obedience a duty. Advice, permission, or direction, is not an order; because it leaves the person to whom it is addressed at liberty to comply with it or not. The

term frequently occurs in the militia act; and is invariably used in this imperative sense. Tit. 112. c. 1. s. 12, 13, 14. 18, 19. 26, 27. This is not only the legal import of the term, but its ordinary acceptation. Those only who can coerce obedience are said to give orders.

2. After a company is dismissed for the day, the authority of the captain is terminated. He then becomes a private citizen. When the captain in this case issued the order in question, he was a citizen only, and had no command; the defendant was a citizen also, and owed no obedience. Dismission, *ex vi termini*, is a discharge from military duty. If the defendant had refused to obey this order of the captain to discharge his musket, could he be punished for disobedience? This is the test.

3. There is no room for construction in this case. Whatever the reason giving birth to the statute was, the object of the legislature is clearly expressed, and the line is defined. It was not thought necessary to trust in the discretion of military officers after dismission of their companies; and no such discretion is given.

*Daggett* and *C. Whittelsey*, for the defendant in error. The statute prohibits the firing of a musket on *any day* of company exercise; immediately after which follows the exception in these words: " Excepting by order of a commissioned officer." The exception is coextensive with the prohibiting clause, so that if the statute prohibits firing after the company are dismissed, a firing by order of a commissioned officer, at that time, is excepted. The mischief which existed under the old law, was the irregular firing of soldiers on the morning of training day, while they were on the parade, and while returning home, by which the peace was disturbed, and the lives of themselves and others endangered. This mischief it was thought best to guard against; but it was sufficient to subject all firing on that day to the discretion of the

military officers. These are men appointed by the legislature, in whom special confidence is reposed. The court will not limit their powers by construction farther than is necessary to restrain the mischief. It is very necessary that they should have the power to order soldiers to discharge their pieces, which happen to be loaded after the company are dismissed. The militia law requires soldiers to be furnished with *ball cartridges ;* their muskets may be charged with these ; and if the officers had not power to order them to be discharged, except on parade, very serious injury might be done.

The statute is silent as to the *place* of firing ; but it would not suppress the mischief to restrict the prohibition to the *parade ground.* Whenever power is given by statute for a certain purpose, so much power is given necessarily as is requisite to effect that purpose. In *Avery* v. *Bulkley,* 1 *Root,* 275. it was decided, that the officer had authority over his soldiers while they were going to the place of review. [SWIFT, J. In the report of that case the facts are not correctly stated.] Further, it does not appear in this case, that the firing was not on the parade ground.

The defendant is charged with a crime, not at common law, but made so by statute, with an exception in favour of those who act under the order of a commissioned officer. The defendant did act by the order of a commissioned officer. Can this court say that the officer could not give the order ? This is a question exclusively of military cognisance. • If the person whose conduct is called in question is a military subject, a court of law cannot interfere.

TRUMBULL, J. Merely to discharge a musket at any time is no crime at common law ; it becomes an offence in those cases only in which it is prohibited by statute.

The statute enacts, " that if any person or persons belonging to either of the militia companies in this state,

shall fire any field-piece, or discharge his musket or pistol, or suffer the same to be done by others, on any regimental, battalion, or company days of exercise, excepting by order of a commissioned officer, he shall, for each offence, forfeit and pay a fine of four dollars."

By the bill of exceptions, it appears that *Hungerford* offered witnesses to prove that after said company was dismissed on said day, the commissioned captain of said company ordered and directed him to discharge and fire his said musket; and on objection, the county court decided that he could not by law introduce said testimony, nor any testimony to prove any order, direction, or permission of said captain after the company was dismissed for the day; and said testimony was not admitted.

It is urged by the counsel for the state, that on a field day, an officer has no military command after the company is dismissed from the ground, and that his orders, having then no force or authority, cannot avail to excuse the delinquent.

What command an officer of militia on a day of review has over his men after his company is dismissed, and what power he may have to enforce any particular orders he may issue, are points not necessary to be investigated in the determination of this case. Firing by the order and direction of a commissioned officer, during any time in the day, is not a firing without orders, and cannot constitute the offence charged in the information, and prohibited by the statute.

The testimony offered was proper and relevant on the issue, and ought to have been admitted before the county court.

The other judges severally concurred in this opinion.

Judgment affirmed.